**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

LARRY SANTIAGO,

                         Plaintiff,                    6:24-cv-00704 (BKS/MJK)

v.

CITY OF ROME, CITY OF ROME POLICE
DEPARTMENT, CITY OF ROME POLICE OFFICER
JOSEPH LONGO (in his individual and official
capacities), CITY OF ROME POLICE OFFICER JOHN
DOES #1-10 (in their individual and official capacities),

                         Defendants.

**Appearances:**
*Plaintiff:*
Pablo A. Fernandez
Horn Wright, LLP
400 Garden City Plaza, Suite 500
Garden City, NY 11530

*Defendants:*
Daniel Cartwright
David H. Walsh, IV
Foti Henry PLLC
403 Main Street - Suite 225
Buffalo, NY 14203

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Larry Santiago brings this action under 42 U.S.C. § 1983 and New York law

against Defendants City of Rome, City of Rome Police Department, City of Rome Police Officer

Joseph Longo, in his individual and official capacities, and City of Rome Police Officer John

Does #1-10 ("PO Does"), in their individual and official capacities. (Dkt. No. 1). Plaintiff brings

seven causes of action under federal law: (1) excessive force; (2) false arrest and unlawful search and seizure; (3) malicious prosecution; (4) abuse of process; (5) fabrication of evidence; (6) failure to intervene; and (7) a *Monell*[1] claim for municipal liability. Plaintiff also brings state law claims for assault and battery, false arrest/imprisonment, malicious prosecution; and respondeat superior. (Dkt. No. 1).[2] Presently before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 13). The motion is fully briefed. (*See* Dkt. Nos. 13-1, 20, 21). For the reasons that follow, Defendants' motion is granted in part and denied in part.

## II.    FACTS[3]

On the morning of February 24, 2023, Plaintiff was "lawfully driving his motor vehicle" in the City of Rome, New York when Defendants Longo and/or the Police Officer Doe Defendants pulled Plaintiff over. (Dkt. No. 1, ¶¶ 13-15). Plaintiff "asked Longo and/or PO Does for the reason he was being pulled over," but "Longo and/or PO Does refused to respond to [Plaintiff] and/or provide a reason for the stop." (*Id.* ¶¶ 16-17). Rather, Longo and/or PO Does demanded that Plaintiff exit the vehicle. (*Id.* ¶ 17). Plaintiff "asked again why he was being pulled over[,]" and Longo and/or PO Does  again "refused to respond to [Plaintiff] and demanded that he exit the vehicle." (*Id.* ¶ 18).

Longo and/or PO Does then reached into Plaintiff's vehicle, grabbed him by his shirt collar, and "forcibly removed [Plaintiff] from his vehicle." (*Id.* ¶ 19). Plaintiff "again

---

[1] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).
[2] Plaintiff withdrew his state law claims for negligence and for negligent hiring, improper supervision, and improper retention. (Dkt. No. 1, at 21-23; Dkt. No. 20, at 27).
[3] These facts are drawn from the Complaint. (Dkt. No. 1). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions asserted therein, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

protested[,]" and Longo and/or PO Does "searched [Plaintiff] by putting their hands into [Plaintiff]'s pant pockets." (*Id.* ¶ 20). Longo and/or PO Does "then pulled [Plaintiff]'s arms behind him, causing [Plaintiff] severe pain," and handcuffed him. (*Id.*).

Longo and/or PO Does "then took [Plaintiff] over to the police vehicle," while Plaintiff "was protesting and asking why he was being arrested." (*Id.* ¶ 21). Longo and/or PO Does "then lifted [Plaintiff]'s arms by the handcuffs and began to slam [Plaintiff]'s body and head onto the police vehicle multiple times." (*Id.*). Longo and/or PO Does "also began to punch" Plaintiff "while outside the patrol vehicle[.]" (*Id.*). Longo and/or PO Does "proceeded to search [Plaintiff]'s vehicle without his consent," then "forcibly threw [Plaintiff] into the police vehicle and turned up the heat to an extremely high and uncomfortable temperature." (*Id.* ¶¶ 21-22).

Plaintiff "attempted to explain to Longo and/or PO Does that his arm was hurting, and that he required medical attention." (*Id.* ¶ 23). He also "requested that the heat be turned down as he was having difficulty breathing." (*Id.*). Longo and/or PO Does ignored Plaintiff's "requests, pleas for help and medical attention." (*Id.*). Plaintiff was "then taken to the precinct and was denied medical treatment." (*Id.* ¶ 27). Plaintiff alleges he was "continuously assaulted throughout his body," (*id.* ¶ 26), and that the injuries he suffered "are permanent in nature." (*id.* ¶ 40).

On June 8, 2023, Plaintiff "was arrested, processed, and charged by Longo and/or PO Does" with violating NY VTL §§ 0512, 0511(1)(A), and 0509(1), as well as NY PL § 145.14. (*Id.* ¶ 28). Plaintiff alleges Defendants "had no evidence to substantiate the charges," (*id.* ¶ 29), and that Defendants Longo and the PO Does "provided false and fabricated information which was used by the District Attorney's Office to prosecute Plaintiff[,]" (*id.* ¶ 55).  "Defendants filed [a] false criminal felony complaint against Plaintiff with an ulterior purpose/motive to subject Plaintiff to punishment without just cause[,]" and "in an attempt to protect Defendants Longo

and the PO Does "and satisfy their personal goals of covering up their wrongdoing[.]" (*Id.* ¶¶ 72-73).

Plaintiff was required to appear multiple times in court, and "[i]nformation about the arrest and/or prosecution was intentionally . . . released to the public, impugning [Plaintiff's] reputation and causing Plaintiff shame and humiliation." (*Id.* ¶ 31). "Plaintiff was required and continued to be required to appear in court after Defendants had incontrovertible evidence that Plaintiff was not involved in the alleged crimes he was arrested and charged with," and Plaintiff was required to appear in court for arraignment. (*Id.* ¶¶ 32-33). "The prosecution of [Plaintiff] was terminated favorably to him." (*Id.* ¶ 34).

## III.     STANDARD

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. See *EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    DISCUSSION

### A.    Materials Outside the Complaint

As a preliminary matter, Defendants seek to introduce "misdemeanor information sheets" (Dkt. No. 13-3) and "body cam videos," (Dkt. No. 13-1, at 7), or Body Worn Camera ("BWC") footage, (Dkt. Nos. 20, at 8; 21, at 5), for consideration in addition to the Complaint, (*see* Dkt. No. 13-1, at 7-8). Defendants argue that "Plaintiff's complaint relies heavily on the body cam video contents and of [sic] the misdemeanor information sheets as he claims the officers fabricated evidence and acted contrary to what is shown in the videos," and these submissions are therefore "integral to the complaint." (Dkt. No. 13-1, at 8-9) (citing *Manzi v. Goldfine*, 2024 WL 2943876, at *4, 2024 U.S. Dist. LEXIS 104680, at *10-11 (S.D.N.Y. June 10, 2024)). Defendants seek dismissal of Plaintiff's section 1983 claims for excessive force, (Dkt. No. 13-1, at 10-12), failure to intervene, (*id.* at 18), and state law claims for assault and battery, (*id.* at 23-24), because Defendants assert that the BWC footage disproves Plaintiff's allegations, (*see, e.g.*, *id.* at 12). Defendants further argue that the misdemeanor information sheets, coupled with the BWC footage, establish probable cause for Plaintiff's arrest, and thereby defeat Plaintiff's section 1983 claims for false arrest and unlawful search and seizure, as well as Plaintiff's state law claims for false arrest and false imprisonment. (*Id.* at 12-13, 24). Defendants also assert that Plaintiff's 1983 claims for fabrication of evidence are "disproven" by the BWC footage and the misdemeanor information sheets. (*Id.* at 17). Finally, Defendants claim that the BWC footage "conclusively" shows "that the acts taken by the police officers were in good faith and supported by a reasonable basis, thus warranting qualified immunity from the state law claims against them." (*Id.* at 23).

Plaintiff disagrees, urging the Court not to "look beyond 'facts stated on the face of the complaint[,] documents appended to the complaint or incorporated in the complaint by reference, and [ ] matters of which judicial notice may be taken." (Dkt. No. 20, at 12 (citing *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)). Plaintiff notes that "there is absolutely no mention of BWC footage within the Complaint," (*id.* at 11), arguing that "Defendants fully ignore the standard of review for motions to dismiss" in their reliance on the BWC footage to defeat Plaintiff's claims, (*see id.* at 14). Plaintiff also argues that Defendants impermissibly rely on "the very documents that Plaintiff alleges were prepared with false and/or fabricated information" to defeat Plaintiff's fabrication of evidence claim. (*Id.* at 21 (citing Dkt. No. 1, ¶ 85)).

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)).

Even where a document is integral to the complaint, it must be "clear" that "no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Id.* at 231 (citation omitted).

"[T]he requirement that there be 'no dispute' about the authenticity of documents 'integral' to the complaint 'has been interpreted strictly: even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible.'" *Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co.*, No. 14-cv-2495, 2016 WL 4382709, at \*7 (S.D.N.Y. Aug. 16, 2016); *see also Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 415 (S.D.N.Y. 2010) ("The Court will not consider those documents submitted by Defendants that are not subject to judicial notice because there are disputes, even if of questionable viability, regarding the authenticity of these documents."). "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Nicosia*, 834 F.3d at 231 (quoting Fed. R. Civ. P. 12(d)).

"Courts specifically may consider video footage at the motion to dismiss stage when the footage is referenced in the complaint and "[k]ey allegations in the complaint rest[ ] on the ... video." *Palm v. Brooks*, No. 22-cv-9729, 2024 WL 1908388, at \*2, 2024 U.S. Dist. LEXIS 80508, at \*4-5 (S.D.N.Y. May 1, 2024) (quoting *Norales v. Acevedo*, No. 21-549, 2022 WL 17958450, at \*2, 2022 U.S. App. LEXIS 35639, at \*4 (2d Cir. Dec. 27, 2022)). Courts in the Second Circuit have repeatedly refused to consider video evidence not attached to, referenced in, or mentioned in the complaint in deciding a motion to dismiss. *See O'brien v. City of Syracuse*, No. 22-cv-948, 2023 WL 6066036, at \*6, 2023 U.S. Dist. LEXIS 164918, at \*18-21 (N.D.N.Y. Sep. 8, 2023) (collecting cases).

1.      **Body Worn Camera Footage**

Defendants cite *Manzi*, 2024 WL 2943876, 2024 U.S. Dist. LEXIS 104680, in support of their argument that the Court should consider the BWC footage on in deciding their motion. (Dkt. No. 13-1, at 8-9). In *Manzi*, the complaint "specifically and repeatedly" referenced body camera footage, and the defendants submitted videos from their body-worn cameras in support of their motion to dismiss. 2024 WL 2943876, at *3-4, 2024 U.S. Dist. LEXIS 104680, at *9-10. The court in *Manzi* held that it would "consider the body-worn footage in adjudicating the motion to dismiss," because the footage was "incorporated by reference and integral" to the complaint. 2024 WL 2943876, at *4, 2024 U.S. Dist. LEXIS 104680, at *10-11. But here, Plaintiff does not reference any BWC footage in his Complaint, nor is there any indication that the allegations in the complaint rest on the video. *See id.* "[F]ar from being integral to the [C]omplaint, the video footage is not even mentioned in it." *See O'Brien*, 2023 WL 6066036, at *6, 2023 U.S. Dist. LEXIS 164918, at *18-19. Therefore, the Court will not consider the body camera footage in deciding Defendants' motion to dismiss. *See id.* (declining to consider body camera footage where the footage was "not attached to, referenced in, or mentioned in the complaint").[4]

2.      **Misdemeanor Information Sheets**

Defendants also "seek to introduce [ ] the misdemeanor information sheets" related to the charges brought against Plaintiff. Defendants argue that the Complaint "relies heavily" on the misdemeanor information sheets, because Plaintiff "claims the officers fabricated evidence[.]"

---

[4] In their Reply Memorandum, Defendants cite caselaw "to show how federal courts throughout the Country have considered such [video] evidence" at the motion to dismiss stage. (Dkt. No. 21, at 5). However, Defendants cite only district court cases in the Eastern District of Virginia and the Northern District of Illinois. (*Id.* at 6-8). And, even in the case Defendants call "most analogous" to the case at bar, the court noted that the "plaintiff also refer[red] to" the BWC footage. (*See id.* at 6-7) (citing *Yousif v. Hailey*, No. 23-cv-81, 2023 WL 7413328, at *1, U.S. Dist. LEXIS 202097, at *3 (E.D. Va. Nov. 9, 2023).

(Dkt. No. 13-1, at 9). Defendants argue that the fabrication of evidence claim is "conclusively disproved by the misdemeanor reports and body cam footage" because the misdemeanor charge of unlicensed operation of a motor vehicle "was deduced from a simple lookup of Plaintiff's driver's license and registration status at the scene." (*Id.* at 17-18).

The Complaint alleges that Defendants "created false and fabricated statements which included the RPD Incident Reports, Narratives, and Charging Instruments," and that Defendants "invented and fabricated circumstances which were used to support the false charges in the charging instrument" used to prosecute Plaintiff. (Dkt. No. 1, ¶¶ 74-75). Even if the misdemeanor information sheets were the charging documents, Plaintiff clearly contests the accuracy of the information in them. *See id.* In light of the dispute "regarding the authenticity or accuracy" of the misdemeanor information sheets, the Court will not consider these documents. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d at 23; *see also Mbody Minimally Invasive Surgery, P.C.*, 2016 WL 4382709, at *7, 2017 U.S. Dist. LEXIS 108598, at *20.

### 3. Claims Dependent on Materials Outside the Complaint

Defendants rely solely on the BWC footage to argue for dismissal of Plaintiff's 1983 claims for excessive force (Count 1), failure to intervene (Count 6), and state law claim for assault and battery (Count 8). (*See* Dkt. No. 13-1, at 10-12, 18, 23-24). Further, Defendants rely solely on the contents of the misdemeanor information sheets and BWC footage to argue for dismissal of Plaintiff's 1983 claim for fabrication of evidence (Count 5). (*See id.* at 17-18). Defendants also rely solely on the misdemeanor information sheets and BWC footage to argue that there was probable cause for Plaintiff's arrest, and to thereby seek dismissal of Plaintiff's section 1983 claims for false arrest and unlawful search and seizure (Count 2), as well as Plaintiff's state law claims for false arrest and false imprisonment (Count 9). (*Id.* at 12-13, 24).

Because Defendants' argument for dismissal for each of these claims is based entirely upon the BWC footage and the misdemeanor information sheets, and the Court has determined that it will not consider these submissions at this time, Defendants' motion to dismiss is denied with respect to Counts 1, 2, 5, 6, 8, and 9. Further, because Defendants rely solely on the BWC footage to argue that Officer Longo and the Doe Police Officers are entitled to qualified immunity, (*id.* at 23), the Court also will not grant dismissal based on the defense of qualified immunity. *See Gambino v. Vill. of Freeport, NY*, No. 20-cv-3216, 2022 WL 138065, at *5, 2022 U.S. Dist. LEXIS 12722, at *13 (E.D.N.Y. Jan. 14, 2022) ("[B]ecause the Court does not consider the Agreement, which was the sole basis for [the defendant's] motion to dismiss the Complaint, the Court denies [defendant's] motion to dismiss the Complaint.").

### B.    Official Capacity Claims

Defendants argue that all official capacity claims against "city officials" should be dismissed, "along with claims against the police department." (Dkt. No. 13-1, at 9). Defendant notes that "departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." (*Id.* (quoting *Zennamo v. Oneida Cnty.*, No. 21-cv-840, 2022 WL 4328346, at *3, 2022 U.S. Dist. LEXIS 168229, at *9-10 (N.D.N.Y. Sept. 19, 2022)). Defendant also argues that "a suit against a municipal officer in his or her official capacity is treated as an action against the municipality itself," and that therefore the official capacity claims against Officer Longo and the other city officials should be dismissed. (*Id.* (citing *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005)).

Plaintiff claims it is "unclear whether Defendants also seek to dismiss claims as to Defendant City of Rome Police Department under the theory that it is merely an administrative

arm of Defendant City." (Dkt. No. 20, at 12). Plaintiff "is willing to accept Defendants'
representations that Defendant City of Rome Police Department is merely an administrative arm
of Defendant City," and "withdraws his claims solely against Defendant City of Rome Police
Department, provided that is in fact what Defendants argue[.]" (*Id.* at 12-13). Plaintiff does not,
however, address Defendants' argument that the official capacity claims against the city officials
should be dismissed.

 With respect to the City of Rome Police Department, Defendants are correct that "[u]nder
New York law, departments which are merely administrative arms of a municipality do not have
a legal identity separate and apart from the municipality and cannot sue or be sued." *Peterson v.
City of Syracuse Police Dep't*, No. 09-cv-00106, 2010 WL 1235392, at *3, 2010 U.S. Dist.
LEXIS 31478, at *8 (N.D.N.Y. Mar. 31, 2010) (quoting *Walker v. Waterbury Police Dep't*, No.
08-cv-0738, 2009 WL 2868231, at *5, 2009 U.S. Dist. LEXIS 7933, at *6 (E.D.N.Y. Feb. 4,
2009)) (dismissing complaint as against the City of Syracuse Police Department).

 With respect to the official capacity claims against Officer Longo and the Doe
Defendants, "state officers in their official capacities are not amenable to suits for damages under
42 U.S.C. § 1983." *Peterson*, 2010 WL 1235392, at *4, 2010 U.S. Dist. LEXIS 31478, at *10.
*See also Tyson v. Willauer*, 290 F. Supp. 2d 278, 287 (D. Conn. 2003) ("[P]laintiffs' claims
against the Police Chief and the individual officers in their official capacities must fail since any
claim against them in their official capacities is tantamount to a claim against the Town itself.").
"A claim that state officials violated state law in carrying out their official responsibilities is a
claim against the State that is protected by the Eleventh Amendment[.]" *Vega v. Semple*, 963 F.3d
259, 284 (2d Cir. 2020) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121
(1984)). That principle applies equally to "state-law claims brought into federal court under

pendent jurisdiction." *Id.* (quoting *Pennhurst*, 465 U.S. at 121). Therefore, Defendants' motion is granted with respect to the official capacity claims against Officer Longo and the Doe Police Officers.

###    C.    Individual Capacity Claims

Defendants argue that Plaintiff's individual capacity claims against Officer Longo and the Doe Police Officers must also be dismissed because Longo and the Doe officials were acting within the scope of their employment when the incident occurred. (Dkt. No. 13-1, at 9-10). But Defendants cite only New York State cases entirely unrelated to section 1983 claims, one involving a state law precluding actions against corrections officers acting within the scope of their employment, *Gore v. Kuhlman*, 630 N.Y.S.2d 141 (N.Y. App. Div. 1995) , and the other involving a general rule under New York State law that a corporate officer cannot be held personally liable for certain actions taken within the scope of their employment, *Herndon-Brown v. Riverdale Country School, Inc.*, No. 20790, 2006 WL 6822141, 2007 N.Y. Misc. LEXIS 3042 (N.Y. Sup. Ct. Apr. 12, 2006). Defendants do not explain how these cases are relevant to the case at bar. Therefore, the Court will not dismiss the individual capacity claims. *See Posr v. Ct. Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) ("The Eleventh Amendment [ ] bars Posr's claims against the various named defendants in their official capacities as state officers. The Eleventh Amendment does not, however, prevent Posr from suing those defendants in their individual capacities. Accordingly, although the claims against these defendants in their official capacities were properly dismissed, the claims against them in their individual capacities require further discussion." (citations omitted)).

### D.    Malicious Prosecution

Defendants argue that Plaintiff has failed to state a claim for malicious prosecution, both under section 1983 (Count 3) and under New York State law (Count 10). (Dkt. No. 13-1, at 13, 24). First, Defendants argue that there was probable cause to arrest Plaintiff, based on the BWC footage and misdemeanor information sheets. (*Id.* at 14). The Court has already dispensed with this argument. *See* discussion *supra* Section IV.A. Separately, Defendants argue that Plaintiff's claim fails "because he did not sufficiently assert that the prosecution was terminated in his favor." (Dkt. No. 13-1, at 14).

Plaintiff disagrees, noting that Defendants ignore the Supreme Court's holding in *Thompson v. Clark*, 596 U.S. 36 (2022). (Dkt. No. 20, at 19). Indeed, Defendants cite only Second Circuit caselaw preceding *Thompson* in support of their argument. (*See* Dkt. No. 13-1, at 14). Prior to *Thompson*, "favorable termination sufficient to support a § 1983 malicious prosecution claim require[d] an affirmative indication of innocence." *Price v. Peress*, No. 18-cv-4393, 2022 WL 4638148, at *11, 2022 U.S. Dist. LEXIS 180001, at *33 (E.D.N.Y. Sept. 30, 2022). But in *Thompson*, the Supreme Court "rejected Second Circuit precedent on the 'favorable termination' element[.]" *Gross v. Sanchez*, No. 20-cv-4873, 2023 WL 5488000, at *10, 2023 U.S. Dist. LEXIS 18799, at *25 (E.D.N.Y. Feb. 1, 2023). After *Thompson*, "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." 596 U.S. at 49.

Defendants are correct that Plaintiff has not alleged facts supporting his allegation that the prosecution "was terminated favorably to him." (Dkt. No. 1, ¶ 34). This allegation is wholly conclusory and is therefore insufficient to support his malicious prosecution claim. *See Adams v.*

*City of New York*, No. 21-cv-3956, 2024 WL 3875772, at *6, 2024 U.S. Dist. LEXIS 147818, at *17-18 (E.D.N.Y. Aug. 19, 2024) (finding plaintiff failed to allege favorable termination where she alleged only that the criminal action against her "terminated in her favor"; "without factual allegations suggesting plaintiff was prosecuted following her arrest or that such prosecution ended in a favorable manner as a matter of law, the [proposed complaint] fail[ed] to state a claim for malicious prosecution"); *Cagan v. Rittenhouse*, No. 22-cv-00260, 2024 WL 1345295, at *7, 2024 U.S. Dist. LEXIS 57832, at *20 (E.D.N.Y. Mar. 29, 2024) (finding plaintiff failed to allege favorable termination where he stated "(in conclusory fashion) that his 'prosecution terminated' when he agreed to an ACD, but did not allege the "ensuing dismissal"). *C.f. Boehner v. City of Rochester*, 609 F. Supp. 3d 220, 235 (W.D.N.Y. 2022) (declining to dismiss malicious prosecution claim where plaintiffs alleged charges against them were dismissed for "facial insufficiency"; this allegation "easily meet Thompson's low bar"); *Francis v. City of Schenectady*, No. 120-cv-00703, 2022 WL 4619326, at *7, 2022 U.S. Dist. LEXIS 179811, at *21 (N.D.N.Y. Sept. 30, 2022) (favorable termination element met where plaintiff alleged charges upon which his arrest was based "were dismissed and sealed"); *Murphy v. City of Elmira*, No. 18-cv-6572, 2023 WL 5938777, at *9, 2023 U.S. Dist. LEXIS 161568, at *27 (W.D.N.Y. Sept. 12, 2023) (finding favorable termination where parties did not dispute the plaintiff "was never convicted of any charges" and plaintiff's charge "was not dismissed in exchange for a guilty plea to any other charge"). Because Plaintiff has failed to allege facts from which the Court could plausibly infer that her prosecution ended without a conviction, Plaintiff's claim for malicious prosecution under section 1983 must be dismissed.

Defendants also do not differentiate between malicious prosecution claims under section 1983 and New York state law claims for malicious prosecution. Instead, "Defendants incorporate

by reference their arguments pertaining to dismissal of the § 1983 malicious prosecution claim."
(Dkt. No. 13-1, at 24). But *Thompson* "does not necessarily settle all the potential legal issues"
related to Plaintiff's state law malicious prosecution claim. *See Maring v. City of Rochester*, No.
21-cv-6720, 2022 WL 2356721, at *4, 2022 U.S. Dist. LEXIS 116344, at *11 (W.D.N.Y. June
30, 2022). "[W]hile it is obvious that *Thompson* bears materially on . . . a malicious prosecution
claim arising under *federal* law, it is unclear how *Thompson* bears on . . . a malicious prosecution
claim arising under *state* common law." *Id.* (citing *Zwick v. Town of Cheektowaga*, No. 17-cv-
727, 2021 WL 4895106, at *3, 2021 U.S. Dist. LEXIS 202413, at *8-9 (W.D.N.Y. Oct. 20, 2021)
("New York law and federal law diverge on the showing required to satisfy the 'favorable
termination' element.")).

Under New York law, "any termination of a criminal prosecution such that the criminal
charges may not be brought again, qualifies as a favorable termination, so long as the
circumstances surrounding the termination are not inconsistent with the innocence of the
accused." *Cantalino v. Danner*, 96 N.Y. 2d 391, 395 (2001). While Defendants do not brief this
issue, Plaintiff's conclusory allegation that the prosecution "was terminated favorably to him,"
(Dkt. No. 1, at ¶ 24), is clearly insufficient to meet the New York standard. *See Facci-Brahler v.
Montgomery Cnty.*, No. 18-cv-0941, 2020 WL 360873, at *7, 2020 U.S. Dist. LEXIS 10292, at
*19 (N.D.N.Y. Jan. 22, 2020) (holding plaintiff failed to allege favorable termination under New
York standard where plaintiff made a "conclusory allegation that '[t]he dismissal of the charge'
for promoting prison contraband in the second degree 'was a favorable termination'"). Therefore,
Plaintiff has also failed to plausibly allege a state law malicious prosecution claim. Defendants'
motion to dismiss is granted with respect to both Plaintiff's federal and state malicious
prosecution claims.

### E.     Abuse of Process

Defendants seek dismissal of Plaintiff's section 1983 abuse of process claim (Count 4), arguing that Plaintiff "has failed to sufficiently assert a collateral objective for the alleged abuse of process[.]" (Dkt. No. 13-1, at 15). Plaintiff disagrees, arguing that the Complaint "adequately alleges that the purpose behind Defendants' actions was to protect Defendant Officers, and to harass, intimidate, coerce, silence, and punish Plaintiff. (Dkt. No. 20, at 20 (citing Dkt. No. 1 ¶¶ 69-81)).

A § 1983 claim for malicious abuse of process "lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).

With respect to the third element, a collateral objective "must exist beyond or in addition to [the] criminal prosecution, but it is usually characterized by personal animus." *Simmons v. Ferrigno*, No. 17-cv-06176, 2019 WL 12361880, at *6, 2019 U.S. Dist. LEXIS 238423, at *17 (W.D.N.Y. Aug. 5, 2019) (quoting *Folk v. City of N.Y.*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017)). Such objectives "have included economic harm, extortion, blackmail, and retribution." *Macdonough v. Spaman*, No. 15-cv-0643, 2016 WL 1298134, at *10, 2016 U.S. Dist. LEXIS 43206, at *32 (N.D.N.Y. Mar. 31, 2016) (quoting *Ketchuck v. Boyer*, No. 10-cv-0870, 2011 WL 5080404, at *7, 2011 U.S. Dist. LEXIS 123144, at *22 (N.D.N.Y. Oct. 25, 2011)). "In other words, [a]buse of process resembles a form of extortion, by which the defendant invokes legal process to coerce the plaintiff into doing something other than what the process necessitates."

16

*Simmons*, 2019 WL 12361880, at *6, 2019 U.S. Dist. LEXIS 238423, at *17 (quoting *Folk*, 243 F. Supp. 3d at 375).

A collateral objective "is not the same as a malicious motive[,]" *id.*, and an improper motive is not actionable, *see Dotson v. Farrugia*, No. 11-cv-1126, 2012 WL 996997, at *8, 2012 U.S. Dist. LEXIS 41195, at *21-22 (S.D.N.Y. Mar. 26, 2012). Allegations of an attempted "cover-up" suggest an improper motive, and do not satisfy the collateral objective element. *See id.* (finding plaintiff did not satisfy collateral objective element where he alleged that defendants made false allegations "to retaliate against the Plaintiff for his perceived affront, and to attempt to cover up the wrongdoing of the Court Officers in having arrested plaintiff"; these allegations alleged "only an improper motive"); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010) (finding collateral objective element not met where the plaintiff did not allege that the defendants "engaged in the legal process to compel performance or forbearance of some act"); *Gilliard v. City of New York*, No. 10-cv-5187, 2013 WL 521529, at *14, 2013 U.S. Dist. LEXIS 18180, at *48 (E.D.N.Y. Feb. 11, 2013) (dismissing abuse of process claim on motion for summary judgment where, "[a]t most, [defendants] issued the summons with the improper *motive* of "cover[ing] up their abuse of authority in arresting plaintiff").

Here, Plaintiff alleges that Defendants filed a false criminal felony complaint against Plaintiff "with an ulterior purpose/motive to subject Plaintiff to punishment without just cause and in order to protect Defendant Longo" and the Police Officer Does. (Dkt. No. 1, ¶ 72). Plaintiff further alleges Defendants falsely prosecuted Plaintiff "in an attempt to protect Defendants Longo and PO Does and satisfy their personal goals of covering up their wrongdoing, and to further their own purposes of exercising their privilege for their own warped sense of power." (*Id.* ¶ 73). These allegations of a "cover-up" do not satisfy the collateral

objective element. *See Dotson*, 2012 WL 996997, at *8, 2012 U.S. Dist. LEXIS 41195, at *21-22. Therefore, Plaintiff has failed to state a claim under section 1983 claim for abuse of process. *See also Brandon*, 705 F. Supp. 2d at 275 ("If [one] uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process." (quoting *Hauser v. Bartow*, 273 N.Y. 370, 374, 7 N.E.2d 268 (1937)).

### F.    *Monell* Claim

Defendants move to dismiss Plaintiff's *Monell* claim against the City (Count 7), on the grounds that Plaintiff has failed to make "any specific factual allegations to plausibly support such a claim." (Dkt. No. 13-1, at 19). Plaintiff disagrees, arguing his claim is "based on a series of acts which constitute a *de facto* municipal policy in direct defiance of the relevant civil rights laws," and that he has adequately pled claims based on the City's "failure to train and retrain, hiring and retaining of incompetent officers, failure to establish and implement meaningful procedures to discipline or re-train officers who have engaged in misconduct, and failure to implement adequate disciplinary policies." (Dkt. No. 20, at 22-23). Plaintiff argues that this "series of deliberately indifferent acts can be considered a municipal policy[.]" (*Id.* at 23).

"To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents," and is liable only when it actually deprives, through the execution of its policies, an individual of their constitutional rights. *Monell*, 436 U.S. at 694.

A municipal policy or custom may be established where the facts show either: (1) a formal policy, officially promulgated by the municipality, *id.* at 690; (2) action taken by the

official responsible for establishing policy with respect to a particular issue, *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84 (1986); (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30 (1985); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). To prevail on a municipal liability claim a plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (quoting *City of Canton*, 489 U.S. at 385).

To establish a claim based upon a widespread practice, a plaintiff must show that the practice is "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (quoting *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992)); *see also Buari v. City of New York*, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021) ("To demonstrate a *de facto* policy or custom through a widespread practice, a plaintiff must 'show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions.'" (quoting *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)). "A plaintiff may also plead the existence of *de facto* customs or policies 'by citing to complaints in other cases that contain similar allegations.'" *Id.* at 398-99 (quoting *Gaston v. Ruiz*, No. 17-cv-1252, 2018 WL 3336448, at *6, 2018 U.S. Dist. LEXIS 112695, at *17 (E.D.N.Y. July 6, 2018). "Such complaints must involve factually similar misconduct, be contemporaneous to the misconduct at issue in the plaintiff's case, and result in an adjudication of liability." *Id.*

For a claim based on inadequate training, a plaintiff must "identify a specific deficiency" in the training that is "closely related to the ultimate injury," such that it "actually caused" the constitutional deprivation. *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 465 (S.D.N.Y. 2009) (citing *Amnesty Am.*, 361 F.3d at 129)). In order for a specific deficiency to constitute deliberate indifference, Plaintiff must show: "(1) a policymaker knows 'to a moral certainty' that employees will confront a given situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult, or that there is a history of employees mishandling the situation; (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *De Michele v. City of New York*, No. 09-cv-9334, 2012 WL 4354763, at *20, 2012 U.S. Dist. LEXIS 136460, at *64 (S.D.N.Y. Sept. 24, 2012) (citing *City of Canton*, 489 U.S. at 390). A similar pattern of misconduct resulting from allegedly inadequate training is also "ordinarily necessary to demonstrate deliberate indifference" for purposes of failure to train. *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation and citation omitted). "Without notice that a course of training is deficient, decision-makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

"[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *De Michele*, 2012 WL 4354763, at *20, 2012 U.S. Dist. LEXIS 136460, at *63 (S.D.N.Y. Sept. 24, 2012) (quoting *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir.1998)); *see also Smith v. City of Syracuse*, No. 19-cv-00997, 2020 WL 1937411, at *3, 2020 U.S. Dist. LEXIS 69672, at *6 (N.D.N.Y. Apr. 21, 2020) ("Except in very rare cases, a 'custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality.'" (quoting *Newton v. City of*

20

*New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008))). A municipality can only be found to be deliberately indifferent based on a single constitutional violation where "the unconstitutional consequences of failing to train [are] so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64.

Here, Plaintiff's conclusory allegations about failure to train "regarding the proper use of force, probable cause, and investigation" and tolerance of "excessive force, probable cause, and investigation by its police officers despite a plethora of complaints from citizens of being subjected to Constitutional violations by police officers" are insufficient to plausibly allege a Monell claim (Dkt. No. 1, ¶ 101). Plaintiff has only alleged one incident and does not identify any details about the "plethora of complaints from citizens" regarding police officer conduct. (*See id.* ¶ 101). Plaintiff has failed to plausibly allege that "the unconstitutional consequences" of the City's alleged failure to train are "so patently obvious" that the city could be liable "without proof of a pre-existing pattern of violations[.]" *See Smith*, 2020 WL 193741, at *3, 2020 U.S. Dist. LEXIS 69672, at *6.

For the first time in his Memorandum in Opposition, Plaintiff points to four other civil actions filed against the City of Rome in support of his allegation that "this is not a single occurrence of alleged civil rights violations by Defendant City." (Dkt. No. 20, at 24 (citing *Parsons v. Lamarco*, No. 24-cv-00870 (N.D.N.Y. filed July 11, 2024); *Ruiz v. City of Rome*, No. 06-cv-00024 (N.D.N.Y. filed Jan. 6, 2006); *Williams v. City of Rome*, No. 08-cv-00014 (N.D.N.Y. Filed Jan. 04, 2008); *Mettot v. City of Rome*, No. 09-cv-01389 (N.D.N.Y. Filed Dec. 14, 2009)). The Court does not consider these assertions which are outside the complaint.[5] Accordingly,

---

[5] The Court notes that, as Defendants point out, three of these cases are over fifteen years old, (*see* Dkt. No. 21, at 11), and the Court further notes that Plaintiff does not elaborate on the nature of these actions, nor the allegations contained within.

Defendants' motion to dismiss Plaintiff's *Monell* claim against Defendant City of Rome is granted.[6]

## V.      LEAVE TO AMEND

Plaintiff seeks leave to amend his complaint, specifically with respect to his *Monell* claims. (*See* Dkt. No. 20, at 25). Defendants oppose amendment, arguing that it would be futile because "the BWC footage conclusively disproves Plaintiff's claims." (Dkt. No. 21, at 14).

Under Federal Rule of Civil Procedure 15(a), absent certain circumstances not at play here, a party may amend its pleading only with the opposing party's written consent or the court's leave. See Fed. R. Civ. P. 15(a)(1)–(2). Rule 15(a)(2) requires that a court "freely give leave when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). But a court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021). A request to amend is futile where the problem with the claim is "substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Here, Defendants argue that amendment would be futile solely because of the BWC footage. However, as discussed above, the Court will not consider the BWC footage at this stage in the litigation. *See* discussion *supra* Section IV.A.1. Because the Complaint's deficiencies may be fixed with better pleading, and because Plaintiff may wish to amend the complaint in light of

---

[6] Defendants also argue that Plaintiff's cause of action based on a theory of respondeat superior (Count 13) against the City must be dismissed, "assuming that there are no underlying claims for which respondeat superior to [sic] attach[.]" (Dkt. No. 13-1, at 30). However, the Court has not dismissed all of Plaintiff's claims. Therefore, the Court will not dismiss Plaintiff's claims based on a theory of respondeat superior.

the BWC evidence submitted by Defendants, the Court grants Plaintiff's request for leave to amend.

## VI.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** and with leave to amend: the § 1983 malicious prosecution claim (Count 3), the § 1983 abuse of process claim (Count 4), the Monell claim (Count 7) and the state law malicious prosecution claim (Count 10); and it is further

**ORDERED** that any amended complaint must be filed within thirty days of the date of this decision; and it is further

**ORDERED** that if no amendment is made, the original complaint shall proceed as to all but the § 1983 malicious prosecution claim (Count 3), the § 1983 abuse of process claim (Count 4), the Monell claim (Count 7) and the state law malicious prosecution claim (Count 10).

**IT IS SO ORDERED.**

Dated:    February 19, 2025
　　　　　Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge